KENNETH J. MONTGOMERY, PLLC
Victor A. Dunlop (VAD-8571)
198 Rogers Avenue
Brooklyn, New York 11225
(718) 403-9261 –Telephone
(614) 455-9261 – Facsimile

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
ANTHONY MARTINEZ,

                                                          **FIRST AMENDED**
                                                          **COMPLAINT**
                Plaintiffs,

                                                      14 Civ. 8686 (KPF)
        -against-

THE CITY OF NEW YORK, a municipal corporation;    **Jury Trial Demanded**
POLICE INSPECTOR JOHN O'CONNELL, Tax ID No: 893465
in his individual and official capacities; POLICE OFFICER
MATTHEW KWIECINSK, Shield No. 12413,
in his individual and official capacities; and JOHN DOES #1-20
(whose identities are currently unknown but who are
known to be police officers and/or supervisory personnel
of the New York City Police Department),
in their individual and official capacities,

                                      Defendants.
-------------------------------------------------------------------------X

        Plaintiff ANTHONY MARTINEZ, by his attorneys, Kenneth J. Montgomery, PLLC, hereby respectfully alleges for his first amended complaint against the City of New York, Police Inspector John O'Connell Tax ID No: 893465, Police Officer Matthew Kwiecinsk, Shield No. 12413, and Police Officers John Does 1-20 (collectively, "Defendants") as follows:

## NATURE OF THE INSTANT ACTION

        1.     This is a civil action, brought pursuant to 42 U.S.C. §1983 and §1988 for violations of the Fourth and Fourteenth Amendments to the United States Constitution and under the common law and the constitution of the State of New York, against the City of New York (the "City"), Police Inspector John O'Connell Tax ID No: 893465, Police Officer Matthew Kwiecinsk, Shield No. 12413, and John Does #1-20 ("Defendant Police

Officers") on behalf of Plaintiff, including but not limited to excessive force, denial of medical care, failure to intervene, implementation and continuation of an unlawful municipal policy, practice and/or custom, and conscious pain and suffering during the incident that had been commonly termed as "Occupy Wall Street" (the "Incident").

2.     During the Incident, Defendants City of New York, Police Inspector John O'Connell Tax ID No: 893465 of the City Wide Counter Terrorism Unit ("P.I. O'Connell"), Police Officer Matthew Kwiecinsk, Shield No: 12413 of Patrol Boro Queens North Task Force ("P.O. Kwiecinsk") and defendant Police Officers John Does 1-20 used unreasonable force on the Plaintiff, assaulted and battered the Plaintiff, denied the Plaintiff medical attention, without any basis, cause or justification, falsely arrested Plaintiff and, maliciously prosecuted Plaintiff.

3.     During the Incident, Defendant City of New York and the NYPD, their agents, servants and/or employees were careless and negligent in, among other things, their failure to properly train, monitor, manage and supervise their police officers in the use of police tactics and the use of force causing harm, conscious pain and suffering to the Plaintiff.

4.     During the Incident, the Defendant City of New York, and its agents, servants and/or employees of the NYPD, namely P.I. O'Connell, P.O. Kwiecinsk and the other Defendant Police Officers deliberately and/or negligently denied Plaintiff prompt medical attention, which could have alleviated his pain and suffering.

5.     The instant action seeks to hold the Defendants liable for misconduct under the federal civil rights statute, 42 U.S.C. §1983 and *Monell v. Dep't of Social Services,* 436 U.S. 658 (1978). The unlawful actions of the Defendants, alleged hereunder, resulted from affirmative *de facto* municipal policies, practices and customs that violate the constitutional rights of individuals involved in public demonstrations, witnessing public demonstrations and recording public demonstrations.

6.     As Plaintiff will demonstrate hereunder, as a matter of policy, the actions of the Defendant Police Officers, which violated Plaintiff's rights, reflect a corrupt culture of

misconduct and physical abuse indicative of NYPD police officers that has long existed at New York City Police precincts and in retaliation against civilians that peacefully gather to protest or exercise their constitutional right to peacefully record protests.

## PRELIMINARY STATEMENT

7. Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §1988 for violations of his civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION and NOTICE OF CLAIM

8. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

9. Jurisdiction is based upon 28 U.S.C. §§ 1331, 1343, and 1367.

## VENUE

10. Venue is properly laid in the Southern District of New York pursuant to 28 U.S.C.§ 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

11. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

12. Plaintiff Anthony Martinez is a citizen of the United States, a Latino male and was at all relevant times a resident of the State of New York and currently resides in the City of New York.

13. Defendant, the City of New York, is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agents in the area of law enforcement to members of the public, and to whom it to serve and protect. Defendant the City of New York assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services by the New York City Police Department ("NYPD").

14. Defendant P.I. O'Connell is and was at all times the ranking member at the scene of the Incident and is responsible, in whole or in part, for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of hereunder, including the ordering of Plaintiff to be handcuffed, held down and denied medical attention. He is sued in his individual and official capacity.

15. Defendant P.O. Kwiecinsk and defendant Police Officers John Does 1-20 (hereinafter, the "Individual Defendants") are and at all times relevant herein duly appointed officers, servants, employees and agents of the NYPD.  The Individual Defendants are being sued hereunder in their individual capacities.

16. At all relevant times, the Individual Defendants were acting under color of state law in the course and scope of their duties as agents, servants, employees and officers of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful function in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant hereunder, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the pursuit of their duties as officers, employees and agents of the NYPD.

17. Plaintiff does not know that true names and shield numbers of defendant Police

Officers John Does 1-20. However, all of the defendants are employees or agents and the NYPD. Accordingly, said defendants are entitled to representation in the underlying action by the New York City Law Department ("Corporation Counsel") upon their request, under N.Y. General Municipal Law § 50-E. Corporation Counsel, then, is hereby placed on notice (a) that Plaintiff intends to name said officers as defendants in a second amended pleading once their true names and shield numbers become known to Plaintiff and that (b) that Corporation Counsel should prepare their defense in the instant action.

18. Defendants' acts hereinafter complained of were carried out intentionally, recklessly, with malice and gross disregard for Plaintiff's rights.

19. At all relevant times, the Defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## RECITATION OF FACTS

20. On November 15, 2011 at approximately 4:20AM, Plaintiff was lawfully present at the corner of Fulton Street and Broadway in the County of New York.

21. Upon information and belief, Plaintiff was in the vicinity of Zucotti Park to witness and record with his video camera what was being advertised as the eviction by the NYPD of the individuals from Zucotti Park that participated in Occupy Wall Street ("OWS").

22. Upon information and belief, pursuant to customary practice, Defendant P.I. John O'Connell's office, would have to receive notice of and give consent to stop and detain persons participating in OWS or witnessing individuals being evicted from Zucotti Park and for subsequent police actions directed at participants and witnesses.

23. Upon information and belief, pursuant to customary practice, the NYPD was

behaving unprofessionally and with an undue and unwarranted aggression aimed at the pedestrians in and around Zucotti Park.

24. Upon information and belief, Plaintiff was filming the aggressive and violent behavior of the NYPD towards the individuals in the vicinity of Fulton Street and Broadway and upon information and belief, making statements that were critical of the NYPD's conduct in the vicinity.

25. Upon information and belief, defendant P.I. John O'Connell told Plaintiff to go to the sidewalk, which would have prevented Plaintiff from filming the interaction between the NYPD and the individuals in the vicinity of Fulton Street and Broadway and within Zucotti Park.

26. Upon information and belief, Plaintiff asked defendant Police Inspector John O'Connell for what reason was he pushing around the pedestrians in the vicinity.

27. As a direct response to Plaintiff's inquiry, defendant P. I. John O'Connell grabbed Plaintiff causing Plaintiff's camera to shut off and began to assault Plaintiff.

28. As Plaintiff attempted to walk away from P.I. O'Connell and towards Zucotti Park, defendant P.I. John O'Connell violently and without justification seized Plaintiff from behind and brutalized him, beat him and detained him at the corner of Fulton Street and Broadway.

29. Plaintiff is 5'2" tall and weighs 125 pounds.

30. In addition to defendant P.I. O'Connell assaulting Plaintiff, several members of the NYPD began jumping on Plaintiff and threw him to the ground.

31. Plaintiff landed on his left hand, causing a fracture to the scaphoid bone in his wrist and a severe injury to his shoulder.

32. The Individual Defendants threw Plaintiff into a pile of garbage, pressed their knees into his back, punched Plaintiff in the face numerous times, struck Plaintiff in his head and body with batons, all causing severe bruising, swelling, a concussion, and other severe injuries to Plaintiff's back, neck and body.

33. Plaintiff turned his face in an attempt to avoid the assault, resulting in Plaintiff sucking into his mouth one of the plastic garbage bags upon which he was thrown, making it extremely difficult to breathe and causing Plaintiff terror.

34. Defendant P.I. O'Connell and the other members of the NYPD were screaming at Plaintiff – entirely disingenuously and falsely – to stop resisting arrest.

35. Plaintiff was not resisting arrest, he was simply trying to move his face and body, which was being controlled by the NYPD, in an attempt to avoid being further seriously injured and/or killed by defendant P.I. O'Connell and the other Individual Defendants.

36. Defendant P.I. O'Connell and the other Individual Defendants handcuffed Plaintiff with plastic 'flexcuffs' and dragged Plaintiff to a police transport vehicle.

37. The flexcuffs were placed on Plaintiff's wrists with an extreme, unnecessary and unreasonable tightness, causing Plaintiff's hands to turn purple, causing Plaintiff further pain and agony.

38. The Individual Defendants that transported Plaintiff refused Plaintiff's pleas that the flexcuffs be loosened.

39. The Individual Defendants that transported Plaintiff also refused Plaintiff's plea for medical attention.

40. Plaintiff was taken to One Police Plaza, where he was mocked about the injuries to his face and forehead.

41. Plaintiff's flexcuffs were removed and Plaintiff was placed into a cell where he

continued to request medical attention.

42. After an unreasonable delay, Plaintiff was taken to the hospital.

43. Plaintiff received medical treatment, including ice to his head, an injection to his shoulder, and his left arm was placed in a sling.

44. Plaintiff was then retuned by the NPYD to One Police Plaza and placed into another cell.

45. From One Police Plaza, Plaintiff was taken to Manhattan Central Booking at approximately 1600 hours, almost 11 hours after he was arrested.

46. Plaintiff was arraigned at approximately midnight on the night of November 15, 2011 and was released on his own recognizance.

47. Plaintiff was charged with Resisting Arrest and Disorderly Conduct.

48. Defendant P.O. Kwiecinski is the deponent on the Criminal Court Complaint, which falsely alleged – based on information provided by defendant P.I. O'Connell, that Plaintiff was observed standing on the corner of Fulton St. and Broadway with approximately 50 other people, and that "said individuals were preventing other pedestrian from being able to use said sidewalk", and that defendant P.I. O'Connell, "gave defendant five (5) orders to disperse and defendant refused to comply with said order and informant observed defendant remain at said location with said group of fifty (50) individuals".

49. The Criminal Court Complaint further alleges that when defendant P.I. O'Connell was attempting to place Plaintiff under arrest, he observed Plaintiff flail his arms and legs, and refuse to place his hands behind his back thereby preventing defendant John O'Connell from handcuffing Plaintiff.

50. The allegations contained in the Criminal Court Complaint were entirely malicious and false.

51. Plaintiff was never told to disperse from the sidewalk. On the contrary, he was ordered to go to the sidewalk at which point in time the Individual Defendants brutalized and beat Plaintiff.

52. Plaintiff was not with fifty (50) people, and there was no reasonable suspicion or founded suspicion for the police officers on the scene to attribute a connection between Plaintiff and the other people present.

53. It was the NYPD and not Plaintiff or the other individuals at the scene that prevented Plaintiff from using the sidewalk and the roadway at the scene.

54. Plaintiff never flailed his arms or legs or refused to be handcuffed.

55. The NYPD completely controlled Plaintiff by beating and assaulting Plaintiff in retaliation for Plaintiff exercising his First Amendment rights by filming the eviction of the participants OWS from Zucotti Park. In addition, Plaintiff is 5'2' and 125 pounds so the Individual Defendants should have had no difficulty in handcuffing Plaintiff.

56. Plaintiff was compelled to make two (2) additional court appearances following his arraignment.

57. On March 9, 2012, all charges against Plaintiff were dismissed in their entirety on the motion of the District Attorney's Office.

FIRST CAUSE OF ACTION
DEPRIVATION OF RIGHTS
42 U.S.C. § 1983 – Fourth Amendment Violations
(Against all Defendants)

58. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "57" with the same force and effect as if fully set forth herein.

59. Defendants, under of color of state law, subjected Plaintiff to the foregoing acts

and omissions without due process of law and in violation of the rights, privileges and immunities secured by the First, Fourth and Fourteenth Amendments to the United States Constitution through 42 U.S.C. § 1983, including without limitation, deprivation of the following constitutional rights:

    i.    freedom from unreasonable seizure, including the excessive use of force;

    ii.    freedom from unlawful detention, meaning detention without good faith, reasonable suspicion or legal justification, and of which Plaintiff was aware and to which Plaintiff did not consent;

    iii.    freedom from interference with activity protected by the First Amendment;

    iv.    freedom from retaliatory use of force;

    v.    freedom from abuse of process; and

    vi.    freedom from deprivation of liberty without due process of law.

60.    All of the aforementioned acts deprived Plaintiff of his constitutional rights and resulted in the injuries and damages set forth above.

61.    As a direct result of the foregoing, Plaintiff was deprived of his constitutional right to liberty, sustained severe physical injuries, pain and suffering, psychological and emotional injuries, great humiliation, costs and expenses, and was otherwise damaged and injured.

SECOND CAUSE OF ACTION
FAILURE TO INTERVENE
42 U.S.C. § 1983 – Fourth Amendment Violations
(Against the Individual Defendants)

62.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "61" with the same force and effect as if fully set forth herein.

63. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the NYPD or other law enforcement agencies employing unjustified and excessive force claims against a civilian.

64. The Individual Defendants, working as a unit, were present for and/or participated in the Incident and witnessed defendant P.I. O'Connell and defendant P.O. John Does 1-20 use unlawful force against Plaintiff.

65. The Individual Defendants' use of excessive force against Plaintiff was obviously unjustified under the circumstances, yet P.I. O'Connell and supervisory officers took no action and made no effort to intervene, halt or protect Plaintiff from being subjected to excessive force by defendant P.I. O'Connell.

66. The Individual Defendants violations of Plaintiff's constitutional rights by failing to intervene in defendant P.I. O'Connell's unconstitutional use of force resulted in Plaintiff's injuries and damages complained of above.

THIRD CAUSE OF ACTION
MALICIOUS PROSECUTION
42 U.S.C. §1983 – Fourth and Fourteenth Amendment Violations
(Against P.I. O'Connell and P.O. Kwiecinsk)

67. Plaintiff repeats and re-alleges paragraphs "1" through "66" as if fully set forth herein.

68. Defendants P.I. O'Connell and P.O. Kwiecinsk initiated and caused and/or caused the continuation of Plaintiff's prosecution, which was intentional, willful, and with malice, and without probable cause.

69. Defendants P.I. O'Connell and P.O. Kwiecinsk engaged in a continuing course of conduct after the November 15, 2011 arrest to deprive Plaintiff of his liberty by, *inter alia,*

knowingly assisting in and pursuing false allegations against him.

70. All charges against Plaintiff were resolved in his favor.

71. By virtue of the foregoing, . Defendants P.I. O'Connell and P.O. Kwiecinsk deprived Plaintiff of his rights under the Fourth and Fourteenth Amendments to be free from unreasonable seizures and to liberty and due process, and are liable to plaintiffs under 42 U.S.C. § 1983.

FOURTH CAUSE OF ACTION
*MONELL* CLAIM
42 U.S.C. § 1983-Fifth and Fourteenth Amendment Violations
(Against defendant City of New York)

72. Plaintiffs repeat, reiterate, and reallege paragraphs "1" through "71" as if fully set forth herein.

73. All of the acts and omissions of the named and unnamed individual defendants descried herein were carried out pursuant to overlapping policies and practices of defendant City of New York, which were in existence at the time of the conduct alleged herein and engaged in with the full knowledge, consent and cooperation and under the supervisory authority of the City of New York and its agency, the NYPD.

74. Defendant City of New York and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the Individual Defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

75. The acts complained of were carried out by the aforementioned Defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of defendant City of New York and the NYPD, all under the supervision of ranking officers of the NYPD.

76.     The aforementioned customs, practices, procedures and rules of defendant City of New York and the NYPD include, but are not limited to, the following unconstitutional practices: (a) using excessive forces on persons engaged in activity protected by the First Amendment; (b) unlawful detentions of civilians engaged in activity protected by the First Amendment; (c) retaliating against innocent bystanders and witnesses to misconduct by other police officers; (d) failing to supervise, train, instruct and discipline police officers and encouraging their misconduct, including but not limited to defendant P.I. O'Connell; and (e) discouraging police officers from reporting the corrupt or unlawful acts of other police officers and retaliating against officers who report police misconduct.

77.     The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the excessive use of force, unlawful detention, interference with protected First Amendment activity, retaliatory use of force, abuse of process and deprivation of liberty without due process of law against individuals apparently associated with OWS while engaged in protected First Amendment activity, are further evinced by the following incidents involving NYPD Officers during OWS[1]:

   a.     On September 19, 2011, an NYPD officer reached over a barricade and grabbed an OWS protestor. The protestor backed away and the officer lunged forward, holding onto the protestor and toppled the metal barricade. The officer then brought the protestor to the ground. According to the article, the incident happened after the officer ordered the protestor to keep moving and the man spoke to the inspector and then lifted his hand stating that he was having difficulty moving;

   b.     On September 20, 2011, police surrounded an OWS protestor, who appeared to be moving away from the officers, and threw him several feet off of an elevated section of the tarp onto the ground;

   c.     On September 20, 2011, an NYPD officer grabbed an individual that was **_holding a camera and appeared to be documenting the arrest of another protestor_**, by the arm and pulled him several feel back. It appeared that the man was given no warning before being

---

[1] The foregoing allegations are available online at http://www.documentcloud.org/403969-suppressing-protest.html in an article entitled Suppressing Protest: Human Rights Violations in the U.S. Response to Occupy Wall Street.

grabbed and pulled;

  d. On September 24, 2011, a journalist stated that police officers threw him against a wall while he was attempting to interview protestors. The journalist stated that he was holding a microphone and wearing an ID badge at the time;

  e. On September 24, 2011, video shows that an officer grabbed an individual *who was holding a camera* by his head and swung him against a car and onto the ground. Video appears to show that the protestor was attempting to document the arrest of another protestor prior to being thrown. A second video shows that the protestor was kneeling down and documenting an arrest when an officer pushed him away;

  f. On September 24, 2011, a journalist who was arrested reported he met a woman *in visible pain from the plastic handcuffs* while riding in a police van. The journalist reported that the woman was arrested *after she took a picture of the protestors*;

  g. On October 5, 2011, video shows that an NYPD officer took two swings with his baton at OWS protestors. The video also appears to show that an officer struck the man *recording the video* with a baton while simultaneously yelling "back up"! The officer did not appear to give the videographer any time to comply before striking him;

  h. On November 15, 2011, the same day as the Incident, numerous police officers arrived at Liberty Plaza to forcefully evict the protestors. Demonstrators obtained a TRO from a NY County Supreme Court judge ordering that police could not prevent demonstrators from being in Liberty Plaza. Despite the foregoing, the NYPD ignored the order and preventing demonstrators from being in the park;

  i. On November 15, 2011, a journalize reported that a police officer shoved a legal observer and a retired judge against a wall after the judge demanded the officer stop beating a protestor;

  j. On November 15, 2011, a civil complaint alleged that officers tackled City Council member Ydanis Rodrigues to the ground and struck him. A journalist reported that the City Council member stated that the officer threw his body in front of her and started hitting his head on the street; and

  k. On November 17, 2011, video appears to show an officer grabbing or pushing a protestor while she is in the street. The protestor appears to move or be moved to a sidewalk. The officer pursued the woman and grabbed her again and dragged her into the street.

  78. The existence of the above-described unlawful *de facto* policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and official of the NYPD and defendants City of New

York and P.I. O'Connell.

79. The actions of the Individual Defendants resulted from and were taken pursuant to the above-mentioned *de facto* policies and/or well settled and widespread customs and practices of the City of New York, which are implemented by members of the NYPD, of engaging in systematic perjury to mask constitutional violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders, and defendants P.I. O'Connell and P.O. Kwiecinsk.

80. Defendant City of New York knew or should have known that the acts alleged herein would deprive Plaintiff of his rights in violation of the First, Fourth and Fourteenth Amendments to the United States Constitution.

81. Defendant City of New York is directly liable and responsible for the acts of the Individual Defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them because it repeatedly and knowingly failed to enforce the rules and regulation of the defendant City of New York and NYPD, and to require compliance with the Constitution and the laws of the United States.

82. Despite knowledge of such unlawful *de facto* policies, practices and/or customs, supervisory and policy-making officers and officials of the NYPD and the City of New York, including defendant P.I. O'Connell have not taken steps terminate these policies, practices and/or customs, do not discipline individuals who engage in such policies, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregards of the effect of these policies, practices and/or customs upon the

constitutional rights of the citizens of the City of New York.

83. The aforementioned policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed hereunder. Specifically, defendant P.I. O'Connell felt empowered to exercise unreasonable and unprovoked force against Plaintiff. Pursuant to the aforementioned policies, practices and/or customs, the Individual Defendants failed to intervene in or report P.I. O'Connell's violation of Plaintiff's rights.

84. Plaintiff's injuries were a direct and proximate result of the defendant City and the NYPD's wrongful *de facto* policies and/or well-settled and widespread customs and practices of the knowing and repeated failure of the defendant City of New York and NYPD to properly supervise, train and discipline their officers.

85. The actions of the Individual Defendants resulted from and were taken pursuant to the following *de facto* policies and/or well-settled and widespread customs and practices of the City of New York, which implemented by agents and employees of the NYPD, of employing wholly unprovoked and excessive force.

86. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and defendant P.I. O'Connell were directly responsible for the violation of Plaintiff's constitutional rights.

WHEREFORE, Plaintiff demands judgment against the defendants individually and jointly and pray for relief as follows:

    a. That he be compensated for violation of his constitutional rights, pain, suffering, mental anguish, and humiliation; and

    b. That he be awarded punitive damages against the individual defendants; and

    c. That he be compensated for attorneys' fees and the costs and disbursements of

    this action; and

  d.  For such further and different relief as this Court may deem just and prope

DATED:  Brooklyn, New York
     May 19, 2015

            Respectfully submitted,
            KENNETH J. MONTGOMERY, PLLC

            Victor A. Dunlop (VAD-8571)

            198 Rogers Avenue
            Brooklyn, New York 11225
            (718) 403-9261 Telephone
            (614) 455-9261 Facsimile
            Attorneys for Plaintiff
            Anthony Martinez